UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
UNITED STATES OF AMERICA,    :
                             :
                             :  MEMORANDUM & ORDER
       -against-             :
                             :  22-CR-158 (ENV)
                             :
JOHNNIE KIM.                 :
                             :
------------------------------------------------------------ x

VITALIANO, D.J.

      On December 29, 2023, defendant Johnnie Kim moved to suppress statements he made to law enforcement agents during a post-arrest interrogation that was conducted on September 14, 2023. Kim Mot., Dkt. 223, at 7–11.[1] After reviewing the parties' opening submissions, the Court held that a suppression hearing was necessary. *See* Order of Feb. 29, 2024, Dkt. 266, at 21–23.[2] The suppression hearing was conducted on March 27, 2024.

      At the outset of the hearing, the parties agreed that the only suppression issue still controverted and to be addressed at the hearing was whether Kim had invoked his right to counsel before his interrogation began. Tr. 3:12–4:4. As pinpointed by Kim's motion papers, the hearing would factually contest whether Kim had validly invoked his right to counsel by saying "he wanted to call his lawyer before entering the [interrogation] room." Kim Mot. at 10. For the reasons that follow, Kim's motion to suppress the post-arrest statements he made to law enforcement officials

---

[1] All page citations refer to Electronic Case Filing System ("ECF") pagination. However, the hearing transcript has not been incorporated into and paginated by the ECF system, and instead, all transcript references are to the document's internal pagination and line numbering.

[2] The Court's Order of February 29, 2024, set forth general facts about the case and, *inter alia*, the principles of law applicable to motions to suppress statements obtained in violation of *Miranda*. Aside from the demands of context, those facts and legal principles will not be further discussed here.

1

on September 14, 2023, is denied.[3]

Discussion

Conforming to the ordinary liturgy for suppression hearings, two members of the Joint Crime Task Force responsible for the investigation that led to the indictment of Kim and his codefendants, Special Agents Brendan Gray and Donald Ford of the FBI, testified first. Having heard their testimony, Kim elected to take the stand and give his own account. In sum and substance, Kim claimed that he invoked his right to counsel once. Tr. 58:16–19, 76:17–20. Kim testified that his request for a lawyer came following his arrest at his home in Queens and transport to lower Manhattan, as he arrived at—what he did not know at the time but later learned—was the parking garage below the FBI's field office. Tr. 54:17–55:4, 55:19–56:2, 58:11–17. At the hearing, Kim claimed that he invoked his right to counsel in this nondescript space by saying, to

---

[3] In his moving papers, Kim also sought to advance the claim that he was incapacitated by opiate withdrawal at the time of his interrogation, rendering his waiver of his *Miranda* rights void as involuntary. Kim Mot. at 7–11. However, because Kim's alleged withdrawal symptoms were not apparent from the video recording of the interrogation, which was made available to and reviewed by the Court on this motion, Kim was expressly advised that, absent a proffer of additional facts to substantiate his claimed opiate withdrawal, the suppression hearing would be limited to whether he had invoked his right to counsel. Order of Feb. 29, 2024, at 21–23. Kim failed to proffer any such evidence prior to the hearing, nor did he seek to do so at the time of the hearing. In the absence of any evidence to support it factually, Kim's claim of opiate withdrawal fails, as does his argument that it rendered his *Miranda* waiver involuntary. *See United States v. Duclos*, No. 18-CR-196 (VAB), 2021 WL 2590167, at *5–6 (D. Conn. June 24, 2021) (declining to suppress statements where there was "no evidence that [defendant] was under the influence of drugs or withdrawal symptoms" when interrogated). Quite to the contrary, in fact, on this record, the government clearly established that Kim received *Miranda* warnings, affirmed that he understood his rights, and waived them fully by answering the case agents' questions in the interrogation room. *See generally* 3500-DF-1; *see also* Tr. 78:14–22. As a consequence, the statements Kim gave at the September 14, 2023, interrogation session are admissible at trial, unless subject to some other objection. *See, e.g., United States v. Ashburn*, 76 F. Supp. 3d 401, 438–41 (E.D.N.Y. 2014) (denying motion to suppress because the defendant "was provided with *Miranda* warnings, did not unambiguously invoke his right to remain silent, and implicitly waived this right by proceeding to answer questions"); *United States v. Belloisi*, No. 20-CR-219 (DLI), 2023 WL 2709879, at *5–6 (E.D.N.Y. Mar. 30, 2023) (same).

2

no one in particular, "I want to call my lawyer." Tr. 55:19–56:2, 58:1–15, 71:20–72:13, 73:2–15, 77:18–20, 82:16–22. On the totality of the record, the Court finds Kim's hearing version of the facts to be inconsistent, illogical, and quite simply, incredible.

Drilling down on Kim's inability to keep his stories straight on the stand, the garage account of his request for counsel unveiled at the hearing was a far cry from the claim in his motion papers that he had invoked his right to counsel "[b]efore stepping into the interrogation room." Kim Decl., Dkt. 223-2, ¶ 4. The subterranean garage was, however, an elevator ride away from the FBI's offices, much less within "stepping" reach of its interrogation room. Tr. 28:21–29:12, 55:5–16, 72:14–15. Rather than acknowledging the flat-out nature of the contradiction and, perhaps, even withdrawing his prior inconsistent declaration, Kim offered the mendacious contortion that there was no contradiction at all because, sequentially, he had arrived in the garage and exited the car before he walked into the interrogation room. Tr. 67:4–8, 73:19–74:4. Kim's lack of candor on this crucial issue devastates his credibility and shreds his argument for suppression.

Accepting, for a moment of scrutiny, Kim's revised story of his call for counsel, his claim is factually lame. Bluntly, Kim's new narrative makes little sense. For instance, the timing of Kim's request to call a lawyer is perplexing. Kim said that he did not know where he was when he arrived in the underground garage and exited the car. Tr. 54:17–55:4. To him, it appeared as though he was stepping into an unremarkable, underground parking garage—there were a few cars, but nothing marked "FBI." Tr. 54:23–55:4, 71:24–72:13. It beggars belief that, in a barren basement garage, Kim suddenly decided to blurt out to no one in particular that he wanted to call a lawyer.

Equally stupefying was Kim's attempt to explain why he did not ask to call a lawyer more

3

than once.  Kim suggested that he asked once and then gave up because of his earlier interactions with Special Agent Lee.  Specifically, Kim mentioned that Special Agent Lee had rebuffed his mid-arrest requests for a sweatshirt, implying that because Special Agent Lee spurned his requests, he was led to believe that any additional attempts to request a lawyer would have been fruitless.  Tr. 51:10–52:17, 56:7–20, 58:18–59:1, 81:14–82:15.  But it is clear from the record that Kim encountered many other members of the task force responsible for his arrest during his journey through FBI processing and offered no explanation as to why he did not ask any of them.  Indeed, Kim said he addressed his lone request to no one, much less to the allegedly unhelpful Special Agent Lee.  Tr. 58:1–5, 77:18–20, 82:10–20.  In short, reliance on Special Agent Lee's alleged rebuff of a sweater as the reason for asking for a lawyer only once has more than a faint aroma of another post-hoc concoction.

Plus, Kim also admitted that he had been arrested over a dozen times, was "pretty familiar with how the criminal justice system works," and knew that if he asked for a lawyer, he would be able to speak with one.  Tr. 62:21–23, 64:13–21.  In other words, Kim "was not a neophyte confronted with a novel set of circumstances, but an individual who had some understanding of the criminal justice system and the [importance] of . . . invoking his rights."  *See United States v. Downs*, No. 13-CR-152, 2014 WL 3736056, at *4 n.1 (D. Vt. July 29, 2014).  Surely, he knew that persistent pursuit of the right he had claimed would be conducive to success.  Given his arrest experience, that he made one request for counsel and gave up because his earlier request for a sweater had been rejected is the pinnacle of the unbelievable.  In stark contrast to Kim, Special Agent Gray was candid, consistent, and credible.  Special Agent Gray, present when Kim arrived at the garage and exited the car, never heard him ask to call, let alone mention, a lawyer.  Tr. 18:8–23.

At any rate, even if Kim uttered some combination of words in the basement garage that he intended as a request for counsel, suppression of the statements he made to investigating agents in the interrogation room would fail. While, in accord with the applicable operational protocols, there is no audio or videotape capturing Kim's transfer from the basement garage, the available videos from his arrest and interrogation show Kim speaking in a low, raspy voice. Tr. 11:13–19; *see generally* 3500-CL-3; 3500-BG-3; 3500-DF-01. Given this context, if there was an audible request, as Kim claims, it comes as no surprise that the agents effecting his transit from the garage to prisoner processing missed it. *See* Tr. 18:8–23. Notably, even Kim, who admitted he had addressed his counsel request to no one in particular, did not testify that the agents acknowledged his request or heard what he said and purposely ignored him. Such unparticularized requests for counsel that go unheard by law enforcement officers arguably within earshot are not effective invocations. *See United States v. Hercules*, No. 13-CR-54-4, 2014 WL 1598015, at *10 (D. Vt. Apr. 17, 2014). At bottom, even accepting Kim's incredible account of events as true, it is plain that there was no clear, unambiguous invocation of the right to counsel that was ignored by the arrest team, the interrogating agents, or any other member of law enforcement that Kim encountered before his interrogation on September 14, 2023.[4]

---

[4] Case law strongly suggests that Kim's purported invocation also fails because it was premature. The Second Circuit has held that a request for counsel is invalid unless it is made "in the context of custodial interrogation." *United States v. Thompson*, 35 F.3d 100, 104 (2d Cir. 1994). Other circuits that have considered the validity of anticipatory invocations of the right to counsel have reached similar conclusions, holding that such invocations are effective only when "interrogation was impending or imminent." *E.g., Alston v. Redman*, 34 F.3d 1237, 1249 (3d Cir. 1994); *United States v. LaGrone*, 43 F.3d 332, 339 (7th Cir. 1994) (holding that defendant did not invoke his right to counsel because he did not ask for a lawyer "*immediately before, in response to, or during custodial interrogation*"); *United States v. Rambo*, 365 F.3d 906, 909 (10th Cir. 2004) ("For the protections of *Miranda* to apply, custodial interrogation must be imminent or presently occurring."); *United States v. Grimes*, 142 F.3d 1342, 1348 (11th Cir. 1998) (holding "that *Miranda* rights may be invoked only during custodial interrogation or when interrogation is

5

Conclusion

For the foregoing reasons, Kim's motion to suppress statements he made to law enforcement officers on September 14, 2023, during his interrogation at the FBI field office located at 26 Federal Plaza in Manhattan and after valid *Miranda* warnings had been administered and the right to counsel lawfully waived, is denied in its entirety.

So Ordered.

Dated: Brooklyn, New York
April 15, 2024

/s/ *Eric N. Vitaliano*
ERIC N. VITALIANO
United States District Judge

---

imminent"); *cf. United States v. Kelsey*, 951 F.2d 1196, 1199 (10th Cir. 1991) (holding that the defendant validly invoked his right to counsel before being interrogated because his interactions with police made clear that interrogation was imminent). There is no dispute here that the time Kim specifies for his invocation of counsel occurred long before any interrogation of him began. After being brought up from the garage, Kim spent at least 20 to 30 minutes getting processed and then waited about an hour for his interrogation to start. Tr. 13:6–17, 16:13–15. Made at least an hour-and-a-half before questioning began, Kim's invocation fails because it was not made in the "context" of interrogation, nor was interrogation "impeding or imminent" at the time of his request.